# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK
# (CENTRAL ISLIP)

| | |
|---|---|
| SALLY BREDBERG and REBECCA BROMBERG, Individually and on Behalf of All Others Similarly Situated, | Case No.: 21-758 |
| Plaintiffs, | |
| v. | **JURY TRIAL DEMANDED** |
| THE HAIN CELESTIAL GROUP, INC., | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiffs Sally Bredberg and Rebecca Bromberg ("Plaintiffs"), individually and on behalf of all others similarly situated, upon personal knowledge as to facts pertaining to themselves and on information and belief as to all other matters, by and through their undersigned counsel, bring this class action complaint against Defendant The Hain Celestial Group, Inc. ("Defendant" or "Earth's Best").

## NATURE OF THE ACTION

1. This consumer class action arises out of Defendant's deceptive marketing practices in connection with its sale of Earth's Best rice cereal (the "Product") throughout the United States. Earth's Best prominently advertises its Earth's Best rice cereal as wholesome, safe food to feed to infants and small children. In reality, though, Earth's Best rice cereal contains high levels of arsenic – higher, in fact, than those allowed by the FDA. As a result, Earth's Best should not be legally sold within the United States, and Earth's Best's failure to disclose that material fact violates state and common law.

1

2. Earlier this month, the United States House of Representatives released a report on levels of heavy metals in baby foods by various manufacturers (the "House Report"). The report showed that Earth's Best rice cereal, in particular, consistently contained inorganic arsenic in excess of FDA action levels of 100 parts per billion ("ppb"). The FDA defines an action level as "limits at or above which FDA will take legal action to remove products from the market."[1]

3. These levels of arsenic represent a health hazard to infants who consume this cereal. The House Report noted that, "The known health risks of arsenic exposure include 'respiratory, gastrointestinal, haematological, hepatic, renal, skin, neurological and immunological effects, as well as damaging effects on the central nervous system and cognitive development in children.'"[2] (citations omitted)

4. The House Report further notes that the FDA set the action level for inorganic arsenic at 100 ppb because the "FDA was focused on the level of inorganic arsenic that would cause cancer."[3] At minimum, Earth's Best continues to market and sell Earth's Best rice cereal knowing that it contains dangerously high levels of a known carcinogen subject to FDA action.

5. However, the House Report further indicates that not only was Earth's Best aware of the unacceptably high levels of arsenic, but specifically tested its product in such a way as to undercount the arsenic present in its product, by testing only the ingredients in its rice cereal rather than the finished product. The House Report noted that "Hain's finished baby foods had more arsenic than their ingredients 100% of the time—28-93% more inorganic arsenic. That

---

[1] https://www.fda.gov/regulatory-information/search-fda-guidance-documents/guidance-industry-action-levels-poisonous-or-deleterious-substances-human-food-and-animal-feed, last accessed Feb. 8, 2021.
[2] https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf at 10, last accessed Feb. 8, 2021
[3] *Id.* at 52.

means that only testing ingredients gives the false appearance of lower-than actual toxic heavy metal levels."[4]

6. As a result, Earth's Best rice cereal consistently contains levels of inorganic arsenic in excess of the action levels set by the FDA. This fact is a concealment, suppression, or omission of material fact under the Illinois Consumer Fraud and Deceptive Business Practices Act as well as a breach of the implied warranty of merchantability.

## JURISDICTION AND VENUE

7. The Court has original subject matter jurisdiction over the case under 28 U.S.C. § 1332(d) because the case is brought as a class action under Fed. R. Civ. P. 23, at least one proposed Class member is of diverse citizenship from Defendant, the proposed Class includes more than 100 members, and the aggregate amount in controversy exceeds five million dollars, excluding interest and costs.

8. Venue is proper in this District under 28 U.S.C. § 1391 because Defendant engaged in substantial conduct relevant to Plaintiffs' claims within this District, has its principal place of business in this District, and has caused harm to Class members residing within this District.

## PARTIES

9. Plaintiff Sally Bredberg is a citizen of the State of Illinois, residing in Cook County. On or about August 17, 2019, Plaintiff Bredberg purchased a box of Earth's Best rice cereal from a Target in Orland Park, Illinois paying $3.49. Had Plaintiff Bredberg known of Defendant's deceptive and misleading practices, she would not have bought the Product, or she would have paid less for it.

---

[4] *Id.* at 57.

10.     Plaintiff Rebecca Bromberg is a citizen of the State of Illinois, residing in Cook County.  On or about April 24, 2020, Plaintiff Bromberg purchased two boxes of Earth's Best rice cereal at a Target in Skokie, Illinois, paying $3.49 each.  Had she known of Defendant's deceptive and misleading practices, she would not have bought the Product, or she would have paid less for them.

11.     Defendant The Hain Celestial Group, Inc. is a Delaware limited liability corporation with its principal place of business at 1111 Marcus Avenue, Lake Success, New York, 11042.  At all relevant times, Defendant has owned, marketed, and sold the Product at issue.

## FACTUAL ALLEGATIONS

12.     Defendant markets and sells Earth's Best rice cereal, which it markets as being "the perfect first food for your little one."[5]

13.     Defendant's packaging, as shown below, shows infants playing in a field of grain and prominently states, "ORGANIC" and "Grown without Potentially Harmful Pesticides or Herbicides."

---

[5] https://www.earthsbest.com/product/organic-baby-rice-cereal/, last accessed Feb. 8, 2021



14. Additionally, Defendant's website contains "Our Promise", prominently labelled, which states that it produces "[P]ure, quality products you can trust."[6]

15. Additionally, Defendant's "Our Promise" page states, "Organic foods are produced without the use of potentially harmful chemicals, pesticides, genetically engineered ingredients, or growth hormones from animal-derived products."[7]

---

[6] https://www.earthsbest.com/why-earths-best/our-promise/, last accessed Feb. 8, 2021.

5

16. Further, Defendant's "Our Promise" page states that their products undergo "Rigorous product testing to guarantee quality and safety."[8]

17. The FDA sets action levels for products when it has concerns that a level of a substance can have a poisonous or deleterious effect on human health.[9]

18. The FDA has stated that

Action levels and tolerances are established based on the unavoidability of the poisonous or deleterious substances and do not represent permissible levels of contamination where it is avoidable. The blending of a food or feed containing a substance in excess of an action level or tolerance with another food or feed is not permitted, and the final product resulting from blending is unlawful, regardless of the level of the contaminant.[10]

19. The FDA further states that, "Action levels and tolerances represent limits at or above which FDA will take legal action to remove products from the market."[11]

20. The FDA has set an action level for inorganic arsenic in rice cereal at 100 ppb.[12]

21. In setting this action level, the FDA has found that,

There is growing evidence from human and animal studies that suggests that exposure to inorganic arsenic during these life stages may increase the risk of adverse health effects, including impaired development during pregnancy and childhood and neurodevelopmental toxicity in infants and young children, and that these adverse effects may persist later in life.[13]

---

[7] *Id.*
[8] *Id.*
[9] *See* https://www.fda.gov/regulatory-information/search-fda-guidance-documents/guidance-industry-action-levels-poisonous-or-deleterious-substances-human-food-and-animal-feed, last accessed Feb. 11, 2021
[10] *Id.*
[11] *Id.*
[12] https://www.fda.gov/food/chemical-metals-natural-toxins-pesticides-guidance-documents-regulations/supporting-document-action-level-inorganic-arsenic-rice-cereals-infants, last accessed Feb. 11, 2021.
[13] *Id.*

22.     The FDA's own testing of rice cereals has shown that the mean level of inorganic arsenic in brown rice cereals on store shelves is 119.0 ppb, while the mean level in white rice cereals on store shelves is 103.9 ppb.[14]

23.     On February 4, 2021, the United States House of Representatives Committee on Oversight and Reform Subcommittee on Economic and Consumer Policy released a report titled "Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury" (the "House Report").[15]

24.     This report contained numerous concerning allegations regarding toxic levels of heavy metals in various types of baby foods.  However, one of the most egregious was the allegation that not only did Earth's Best rice cereal contain levels of inorganic arsenic in excess of those allowed under FDA action levels, but that Earth's Best knew of this and took steps to either conceal or suppress this fact.

25.     The House Report stated about arsenic exposure:

Arsenic is ranked number one among substances present in the environment that pose the most significant potential threat to human health, according to the Department of Health and Human Services' Agency for Toxic Substances and Disease Registry (ATSDR). The known health risks of arsenic exposure include "respiratory, gastrointestinal, haematological, hepatic, renal, skin, **neurological and immunological effects, as well as damaging effects on the central nervous system and cognitive development in children**." (emphasis in the original)

Studies have concluded that arsenic exposure has a "significant negative effect on neurodevelopment in children." This negative effect is most pronounced in Full Scale IQ, and more specifically, in verbal and performance domains as well as memory. For every 50% increase in arsenic levels, there is an approximately "0.4 decrease in the IQ of children." (citations omitted)[16]

---

[14] *Id.*

[15] Available at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf, last accessed Feb. 11, 2021.

[16] *Id.* at 10.

26. Specifically with regard to Earth's Best's testing of its rice cereal (which focused on the testing of brown rice flour, the primary component of its rice cereal[17]), the House Report noted that "Hain does not regularly test finished baby food products for inorganic arsenic content. It typically only tests ingredients. However, when Hain did test a small sample of finished product, it found 129 ppb inorganic arsenic."[18]

27. This flies in the face of Hain's representation that its products undergo "[r]igorous product testing to guarantee quality and safety", as mentioned *supra*.

28. Further, Earth's Best levels of inorganic arsenic appear to stem from two factors. The first is that its brown rice flour contains, on average, levels of inorganic arsenic dangerously near or often above the FDA action levels. As Defendant itself states, the average level of inorganic arsenic sampled in brown rice flour from 2015 and 2016 was 98.5 ppb, just 1.5 ppb below the level allowed in the finished product. From 2016 to 2019, that level dropped (again, on average) to 69.3 ppb, still less than 31 ppb below the action level.[19]

29. However, Defendant also adds a vitamin pre-mix to its rice cereal which contains dangerously high levels of inorganic arsenic (and lead).[20] The one set of results for sample testing of the pre-mix that was submitted to the FDA and the House of Representatives contained

---

[17] https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2.pdf at Hain-000159, last accessed Feb. 11, 2021
[18] https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf at 16, last accessed Feb. 11, 2021
[19] https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2.pdf at Hain-000161, last accessed Feb. 11, 2021
[20] https://oversight.house.gov/sites/democrats.oversight.house.gov/files/11_Redacted.pdf, last accessed Feb. 11, 20201.

223 ppb of inorganic arsenic. However, Defendant not only did not reject the sample, it used it and then – amazingly – did not test the finished rice cereal.[21]

30. The House Report stated of the use of this vitamin pre-mix:

What can account for this increase in inorganic arsenic from the time the ingredients are tested to the time the products are finished? Hain conveyed to FDA that the cause of the increase was Hain's use of a dangerous additive, stating: "Preliminary investigation indicates Vitamin/Mineral Pre-Mix may be a major contributing factor." Although this additive may only make up roughly 2% of the final good, Hain suggested it was still responsible for the spike in the levels of inorganic arsenic in the finished baby food.[22]

31. The House report concluded that, "Hain's finished baby foods had more arsenic than their ingredients 100% of the time—28-93% more inorganic arsenic. That means that only testing ingredients gives the false appearance of lower-than-actual toxic heavy metal levels."[23]

32. This means that even at the lower end of the estimates – namely, levels of inorganic arsenic 28% more than the tested ingredients would indicate – the vast majority of the rice cereal sold by Earth's Best contains levels of inorganic arsenic that violate FDA action levels.

33. More critically, however, because of Defendant's policy of not (with minor exceptions) testing the finished rice cereal, Defendant blindly ships its boxes to retailers without having checked the levels of inorganic arsenic present in its cereal

34. So rather than reforming its testing procedure, or at least including a warning on each package that its rice cereal is extremely likely to contain levels of inorganic arsenic considered neurotoxic by the FDA, Defendant instead does nothing.

---

[21] https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf at 54-55, last accessed Feb. 11, 2021
[22] https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf  at 56, last accessed Feb. 11, 2021
[23] *Id*. at 57.

35. Defendant's failure to test its finished Product to ensure levels of inorganic arsenic below 100 ppb or, in the alternative, to label that its Product is extremely like to contain levels of inorganic arsenic above FDA action levels, is a material omission, suppression, or concealment.

36. Defendant's decision to omit or conceal information on the levels of inorganic arsenic in its rice cereal allows it to charge a premium for its product by selling a product that consumers (including Plaintiffs) believe to be a safe, wholesome cereal to feed to infants and small children, rather than a dangerous, toxic product for which consumers would pay less for or not buy at all.

## **CLASS ALLEGATIONS**

37. Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), on behalf of a Class defined as follows (sometimes referred to as the "Nationwide Class"):

> All persons in the United States and its territories who purchased, other than for resale, Earth's Best rice cereal during the Class Period.

> Excluded from the Class are: (i) Defendant and its officers and directors, agents, affiliates, subsidiaries, and authorized distributors and dealers; (ii) all Class members that timely and validly request exclusion from the Class; and (iii) the Judge presiding over this action.

38. Alternatively, Plaintiffs brings this case as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of the following subclass:

> All persons in the State of Illinois who purchased, other than for resale, Earth's Best rice cereal during the Class Period.

> Excluded from the subclass are: (i) Defendant and its officers and directors, agents, affiliates, subsidiaries, and authorized distributors and dealers; (ii) all subclass members that

timely and validly request exclusion from the subclass; and (iii) the Judge presiding over this action. The claims do not include personal injury claims. The Class and the Subclass are sometimes collectively referred to as the "Class".

39. Certification of Plaintiffs' claims for class-wide treatment are appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

40. The members of the Class are so numerous that joinder of the Class members would be impracticable.

41. Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Such common questions of law or fact include, *inter alia*:

- A. Whether Defendant engaged in the conduct alleged;

- B. Whether Defendant omitted, suppressed, or concealed material facts in the marketing and sales of the Product;

- C. Whether Plaintiffs and the Class members paid for a product that they would not have purchased or would have paid less for had they known the material facts omitted, suppressed, or concealed by Defendant;

- D. Whether Plaintiffs and the Class members have been damaged and, if so, the measure of such damages;

- E. Whether Defendant unjustly retained a benefit conferred by Plaintiffs and the Class members; and

- F. Whether Plaintiffs and the Class members are entitled to equitable relief, including, but not limited to, a constructive trust, restitution, and injunctive relief.

42. Plaintiffs' claims are typical of the claims of the Class members because, among other things, Plaintiffs and the Class members were injured through the substantially uniform misconduct described above. Plaintiffs are advancing the same claims and legal theories on

behalf of themselves and all Class members.

43. Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other Class members they seek to represent; they have retained counsel competent and experienced in complex commercial and class action litigation; and Plaintiffs intend to prosecute this action vigorously. The interests of the Class members will be fairly and adequately protected by Plaintiffs and their counsel.

44. A class action is also warranted under Fed. R. Civ. P. 23(b)(2), because Defendant has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole. Defendant has directed and continues to direct its conduct to all consumers in a uniform manner. Therefore, injunctive relief on a class-wide basis is necessary to remedy continuing harms to Plaintiffs and the Class members caused by Defendant's continuing misconduct.

45. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other detriment suffered by Plaintiffs and the Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Class members to individually seek redress for Defendant's wrongful conduct. Even if Class members could afford individual litigation, the court system should not be required to undertake such an unnecessary burden. Individualized litigation would also create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single

court.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Unjust Enrichment
### (By Plaintiffs on Behalf of the Nationwide Class)

46. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 45 as if fully set forth herein.

47. Plaintiffs bring this claim individually and on behalf of the members of the Class.

48. Defendant has been unjustly enriched to Plaintiffs' and the Class members' detriment as a result of its unlawful and wrongful retention of money conferred by Plaintiffs and the Class members who relied on Defendant's representations regarding the nature of its rice cereal and paid a premium price for Defendant's Product as a result.

49. Defendant's unlawful and wrongful acts, including the omission, suppression, or concealment of levels of inorganic arsenic in its rice cereal, enabled Defendant to unlawfully receive monies it would not have otherwise obtained.

50. Plaintiffs and the Class members have conferred benefits on Defendant, which Defendant has knowingly accepted and retained.

51. Defendant's retention of the benefits conferred by Plaintiffs and the Class members would be against fundamental principles of justice, equity, and good conscience.

52. Plaintiffs and the Class members seek to disgorge Defendant's unlawfully retained profits and other benefits resulting from its unlawful conduct, and seek restitution and rescission for the benefit of Plaintiffs and the Class members.

53. Plaintiffs and the Class members are entitled to the imposition of a constructive trust upon Defendant, such that its unjustly retained profits and other benefits are distributed equitably by the Court to and for the benefit of Plaintiffs and the Class members.

## SECOND CLAIM FOR RELIEF
**The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*.**
**(By Plaintiffs on Behalf of the Illinois Subclass)**

54. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 45 as if fully set forth herein.

55. The express purpose of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") is to "protect consumers" "against fraud, unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce…." 815 ILCS 505/1.

56. Plaintiffs and the Subclass members are "consumers" within the meaning of 815 ILCS 505/1(e).

57. Defendant is engaged in "trade or commerce" as defined by 815 ILCS 505/1(f).

58. 815 ILCS 505/2 declares unlawful "unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omissions of such material fact … in the conduct of any trade or commerce."

59. Defendant's unfair and deceptive practices, including its material omissions, concealments, and/or suppressions, are likely to mislead – and have misled – consumers acting reasonably in the circumstances, and violate 815 ILCS 505/2. This includes misleading Plaintiffs and the Class.

14

60. Defendant has violated the ICFA by engaging in the unfair and deceptive practices as described herein which offend public policies and are immoral, unethical, unscrupulous, and substantially injurious to consumers.

61. Plaintiffs and members of the Class have been aggrieved by Defendant's unfair and deceptive practices in that they purchased the Product, which they would not have purchased or would not have paid as much for had they known the true facts.

62. The damages suffered by Plaintiffs and the Class were directly and proximately caused by the deceptive, misleading and unfair practices of Defendant, as more fully described herein.

63. Pursuant to 815 ILCS 505/10a, Plaintiffs and the Class seek a court order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement. Additionally, pursuant to 815 ILCS 505/10a, Plaintiffs and the Class seek economic damages, punitive damages, and attorneys' fees and costs.

64. In accordance with 815 ILCS 505/10a, Plaintiffs, concurrent with the filing of this complaint, has served notice of this complaint on the Illinois Attorney General.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that the Court enter judgment in their favor and against Defendant as follows:

    A.    Certifying the Class under Federal Rule of Civil Procedure 23, as requested herein;

    B.    Appointing Plaintiffs as Class Representatives and Plaintiffs' Counsel as Class Counsel;

    C.    Awarding Plaintiffs and the Class members damages and/or equitable relief as appropriate;

15

D. Awarding Plaintiffs and the Class members declaratory and injunctive relief;

E. Awarding Plaintiffs and the Class members restitution and disgorgement;

F. Imposing a constructive trust for the benefit of Plaintiffs and the Class members on the unjustly retained benefits conferred by Plaintiffs and the Class members upon Defendant;

G. Awarding Plaintiffs and the Class members reasonable attorneys' fees, costs, and expenses; and

H. Granting such other relief as the Court deems just and appropriate.

## JURY TRIAL DEMAND

Plaintiffs, individually and on behalf of all others similarly situated, hereby request a jury trial on all claims so triable.

DATED: February 11, 2021

by: s/ *Kevin G. Cooper*
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Matthew M. Guiney
Kevin G. Cooper
270 Madison Avenue
New York, New York 10016
Tel.: (212) 545-4600
Fax: (212) 686-0114
guiney@whafh.com
kcooper@whafh.com

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**
Carl V. Malmstrom
111 W. Jackson St., Suite 1700
Chicago, Illinois 60604
Tel.: (312) 984-0000
Fax: (212) 686-0114
malmstrom@whafh.com

*Counsel for Plaintiffs and the Proposed Class*

whafhch56306